# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRUSTEE OF THE NATIONAL AUTOMATIC SPRINKLER INDUSTRY WELFARE FUND, *et al.* | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 8:19-cv-02287-PX |
| VICTORY FIRE PROTECTION, LLC, | * | |
| Defendant. | * | |

\*\*\*

## **MEMORANDUM OPINION**

Pending before the Court is Plaintiffs' motion for default judgment. ECF No. 10. Defendant Victory Fire Protection, LLC ("Victory Fire") has not responded and the time for doing so has passed. Loc. R. 105.2. The Court now rules because no hearing is necessary. Loc. R. 105.6. For the reasons that follow, Plaintiffs' motion is granted.

**I.     Background**

Plaintiffs, trustees of several multiemployer benefit funds, have brought suit under the Employee Retirement Income Security Act of 1974 ("ERISA") to recover unpaid contributions. Victory Fire is a contractor in the sprinkler industry and has entered into a Collective Bargaining Agreement ("CBA") that established the terms and conditions of employment for its journeyman and apprentice sprinkler fitters. ECF No. 1 ¶¶ 3–5. The CBA provides that Victory Fire shall make certain payments into several multiemployer employee benefit plans as required under the agreements. Payment is determined by the number of hours its employees worked. *Id.* ¶ 5. More particularly, Victory Fire was obligated to make payments into the National Automatic Sprinkler Industry Welfare Fund, the National Automatic Sprinkler Local 669 UA Education Fund, the National Sprinkler Industry Pension Fund, the Sprinkler Industry Supplemental

Pension Fund, and the International Training Fund (collectively the "NASI funds"). *Id.* ¶¶ 2, 5.

Victory Fire has failed to make several required contributions to the NASI funds. *Id.* ¶ 8. Although Victory Fire had originally failed to submit payments for May through July of 2019, it did so subsequent to the filing of this suit. *Id.*; ECF No. 10-3 ¶ 9. Thereafter, however, Victory Fire failed to submit contributions for August through October 2019. ECF No. 10-3 ¶ 10.

Victory Fire additionally failed to submit reports to the funds as required by the CBA. ECF No. 1 ¶ 8. This failure authorizes the NASI funds to project Victory Fire's delinquency as either the average required payment from the past three or twelve months, whichever is greater. *Id.* ¶ 9. Under this computation method, Victory Fire owes $88,961.48, which is calculated as a projection from the months of May, June, and July 2019. ECF No. 10-3 ¶ 12. Victory Fire has overpaid in past months, resulting in a credit balance of $10,562,01 and net liability of $78,399.47. *Id.* ¶¶ 12–13.

The CBA also provides for liquidated damages should Victory Fire fall behind in payments as follows: 10% of payment value if payment has not been made by 15th of the month, an additional 5% if payment is still outstanding on the last working day of the month, and an another 5% if payment is outstanding on the 15th of the following month. *Id.* ¶ 14. Using this formula, Plaintiffs calculate that Victory Fire owes $52,494.80 in liquidated damages for the payments due August and September of 2018, and January to October 2019. ECF No. 10-3 ¶ 17.

On August 7, 2019, Plaintiffs filed suit to recover the Victory Fire's outstanding payments and liquidated damages plus attorneys' fees, costs, and interest. ECF No. 1. Plaintiffs effectuated service on August 27, 2019. ECF No. 7. Victory Fire, however, did not answer or otherwise respond. Accordingly, Plaintiffs moved simultaneously for entry of default and default judgment on November 21, 2019. ECF Nos. 9. 10. The Clerk entered default on

December 2, 2019. ECF No. 11. As Victory Fire has still yet to respond, the Court now rules and grants Plaintiffs' motion for default judgment.

**II.     Standard of Review**

Rule 55 governs default judgments entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The Court may enter default judgment at the plaintiff's request and with notice to the defaulting party. Fed. R. Civ. P. 55(b)(2). Although courts maintain "a strong policy that cases be decided on the merits," *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment is appropriate when the "adversary process has been halted because of an essentially unresponsive party," *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

In deciding whether to grant default judgment, the Court takes as true the well-pleaded factual allegations of the complaint, other than those pertaining to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The Court applies the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in this context. *See Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). Accordingly, where a complaint avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," the Court will not enter default judgment. *Russell v. Railey*, No. DKC 08-2468, 2012 WL 1190972, at *3 (D. Md. Apr. 9, 2012) (quoting *Iqbal*, 556 U.S. at 678); *see, e.g.*, *Balt. Line Handling Co.*, 771 F. Supp. 2d at 545 ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

If the complaint avers sufficient facts from which the court may find liability, the court next turns to damages. *See Ryan,* 253 F.3d at 780-81. Damages are circumscribed by that which is requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). The damages request must be supported by evidence introduced either at a hearing or by affidavit or other records. *See* Fed. R. Civ. P. 54(c); *Lawbaugh,* 359 F. Supp. 2d at 422; *see, e.g., Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794–95 (D. Md. 2010).

### III. Analysis

### A. Liability

ERISA requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145; *see also* 29 U.S.C. § 1132(g) (providing that employers who fail to timely make contributions are liable in a civil action for, *inter alia*, unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorneys' fees, and costs of the action). ERISA "provide[s] trustees of multiemployer benefit plans with an effective federal remedy to collect delinquent contributions." *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 685–86 (D. Md. 2013) (quoting *Laborers Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988)). The United States Court of Appeals for the Fourth Circuit has held that "a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997).

Taking the well-pleaded facts in the Complaint as true, Plaintiffs have established that Victory Fire was required to make employer contributions to the NASI funds. Plaintiffs also established that Victory Fire failed to make such contributions in violation of 29 U.S.C. § 1145. ECF No. 1. Victory Fire is thus liable for the payment of amounts owed to each fund and default judgment is appropriate.

### B. Damages

As to damages, Plaintiffs by statute may collect (1) delinquent contributions, (2) liquidated damages assessed on the late contributions, (3) interest as provided in 29 U.S.C. § 1132(g), (4) attorneys' fees and costs, and (5) other legal or equitable relief the Court deems appropriate. *See* 29 U.S.C. § 1132(g).

In support of their damages request, Plaintiffs submit the declaration of John Eger, an Assistant Fund Administrator, ECF No. 10-3, the relevant trust agreements, ECF Nos. 10-6, 10-7, 10-8, 10-9, 10-10, and a spreadsheet that documents Victory Fire's liability, ECF No. 10-13. As for attorneys' fees, Plaintiffs' counsel, Charles Gilligan, submits a declaration and spreadsheet documenting the hours expended on the case, ECF Nos. 10-14, 10-15, and documents costs associated with service, ECF No. 10-16. Because this evidence is sufficient for the Court to ascertain allowable damages and the requested amounts are consistent with the damages sought in the Complaint, the Court will award damages without a hearing as follows. *See, e.g.*, *Monge*, 751 F. Supp. 2d 789 794–96.

Victory Fire owes $78,399.47 in outstanding contributions, which derives from a projection from the months of May, June, and July 2019. ECF No. 10-3 ¶ 12. Based on this evidence, the Court awards Plaintiff this amount in unpaid contributions. As for liquidated damages, the Court awards then delinquent payments and the penalties assessed pursuant to the

pertinent agreements. *See* ECF No. 10-3 ¶ 17; ECF No. 10-13. Based on this evidence, the Court awards $52,494.80 in liquidated damages.

Plaintiffs are also entitled to interest on unpaid contributions. Interest is "determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g). Under the pertinent trust agreements, an annual interest rate of 12% is compounded on Victory's unpaid contributions and awarded to Plaintiffs. ECF No. 10-6 at 37; ECF No. 10-7 at 34; ECF No. 10-8 at 36; ECF No. 10-9 at 35; ECF No. 10-10 at 58. Through December 1, 2019, this interest totals $3,159,36. ECF No. 10-13. The Court awards this interest plus interest accrued since December 1, 2019 until the date of payment.[1]

Finally, Plaintiffs are entitled to attorneys' fees and costs under the Trust Agreements. ECF No. 10-6 at 25; ECF No. 10-7 at 22; ECF No. 10-8 at 23; ECF No. 10-9 at 22; ECF No. 10-10 at 27. The Court considers the reasonableness of attorneys' fees under Appendix B to this Court's Local Rules and the following factors: the professional time and labor invested, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; the likelihood, if apparent to the client, that the lawyer's acceptance of the particular engagement will preclude other employment; the fee customarily charged in the locality for similar legal services; the amount in controversy and the results obtained; the time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client; the experience, reputation, and ability of the lawyer or

---

[1] Although the damages sought are greater than the amounts pleaded in the Complaint, the award is nonetheless appropriate. This is because default judgment may include "costs, interests, and reasonable attorneys' fees" as requested in the Complaint. ECF No. 1 ¶ 15. The Court finds that the additional amounts as articulated above are proper under Federal Rule of Civil Procedure 54(c). *See Trs. of Nat'l Automatic Sprinkler Indus. Welfare Fund v. Harvey*, No. GJH-17-0449, 2017 WL 4898264, at *5 (D. Md. Oct. 27, 2017); *see also Trs. of Nat'l Automatic Sprinkler Indust. Welfare Fund v. First Responder Fire Prot. Corp.*, No. GJH-16-4000, 2017 WL 3475678, at *2 (D. Md. Aug. 11, 2017) ("Defendant is fairly regarded to be on notice of the subsequent increase due to the continuing obligations to make contributions to the Funds under the applicable collective bargaining agreements.").

lawyers performing the services; and whether the fee is fixed or contingent. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009); Loc. R., App. B.

Gilligan is a partner with O'Donoghue & O'Donoghue, LLP and been barred in this district since 1986. ECF No. 10-14 ¶ 1. Paralegal Teresa Butler, who has been with the firm since 1985, also worked on this case. *Id.* ¶ 2. Gilligan charged $310 per hour prior to November 1, 2019 and $325 after that date. *Id.* ¶ 5. Butler charged $122 per hour before November 1, 2019 and $145 thereafter. *Id.* ¶ 6. These rates fall within the presumptively reasonable ranges established by this Court's Local Rules. Loc. R. 1(c), Appx. B (providing a range of $300 to $475 per hour that attorneys admitted to the bar for 20 or more years, and a range of $95 to $150 per hour for paralegals and law clerks).

According to the spreadsheet provided to the Court, Gilligan worked 0.75 hours on the case and Butler 8.5 hours, both of which appear reasonable. *See* ECF No. 10-15. The lodestar calculation (reasonable hourly rate multiplied by hours of work performed) thus supports the requested award of $1,330.75 in attorneys' fees. The record also supports Plaintiffs' request for $595 legal costs, which comprises the $400 filing fee and $195 for the process server. *Id.*; ECF No. 10-16. Therefore, the Court grants Plaintiffs' request for a total of $1,330.75 in attorneys' fees and $595 in costs.

### IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for default judgment is hereby GRANTED. A separate Order follows.

___4/3/2020_____  ___/s/_____
Date                          Paula Xinis
                              United States District Judge

7